JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No.   CV 13-03153 MMM (Ex)                    Date   November 14, 2013

Title   *Ortega v. Romero et al.*

Present: The Honorable   MARGARET M. MORROW

|                ANEL HUERTA                |                   N/A                   |
| :---------------------------------------: | :-------------------------------------: |
|                Deputy Clerk               |             Court Reporter              |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

None                                                        None

**Proceedings:**          **Order Remanding Case to State Court**

On February 27, 2013, Lisette Huape Ortega filed this action in Los Angeles Superior Court against Ernesto Romero, Auto Zone West, Inc. aka Auto Zone International, LLC ("AutoZone"), and certain fictitious defendants.[1]  Defendants removed the action to this court on May 2, 2013, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.[2]  On July 22, 2013, the court granted AutoZone's motion to dismiss after construing Ortega's untimely opposition seeking leave to amend as a notice of non-opposition.[3]  Ortega filed a first amended complaint on August 13, 2013, asserting three claims under the California Fair Employment and Housing Act ("FEHA"), CAL. GOV'T CODE § 12940, *et seq.*: harassment, failure to prevent harassment, and retaliation.[4]  On August 22, 2013, AutoZone filed a motion to dismiss,[5] which Ortega did not oppose.  Because the court's review of Ortega's first amended complaint and the pending motion to dismiss has revealed that the court lacks

---

[1]Removal, Docket No. 1 (May 2, 2013), Exh. 1 (Complaint).

[2]*Id.*

[3]Order Granting Defendant's Motion to Dismiss ("MTD Order"), Docket No. 15 (July 22, 2013), at 1-3.

[4]First Amended Complaint ("FAC"), Docket No. 20 (Aug. 13, 2013).

[5]Motion to Dismiss, Docket No. 21 (Aug. 22, 2013).

subject matter jurisdiction to hear the case, it declines to reach the merits of the pending motion and instead reconsiders whether it has subject matter jurisdiction to hear the action.

## I.  FACTUAL BACKGROUND

Ortega's amended complaint alleges that she was employed as a store manager for AutoZone until her discharge on March 15, 20[1]1.[6]  She was purportedly terminated for stealing money from the store, but alleges that her discharge was pretextual because she was in fact discharged in retaliation for working in the "man's field" of automobile parts and for complaining to superiors about harassment by her supervisor, Romero.[7]  Ortega asserts that there are cameras posted at the cash registers, and that when she confronted Romero about the cameras, he said he could not view or show her the tape of the alleged incident.[8]

Ortega contends that prior to her discharge, Romero sexually harassed her by stating that she was not qualified to handle the male work performed at AutoZone.[9]  Despite being told to stop making such comments, Romero did not, and "the retaliation [for her complaints about sexual harassment became] more noticeable."[10]  Ortega alleges that as a supervisor, Romero did not stop other employees from making sexual comments, e.g., that working at AutoZone was not for women, and women did not know anything about automobiles.[11]

Ortega alleges that AutoZone knew Romero was harassing her because she made complaints, that AutoZone failed to take corrective action, and that it allowed Romero to terminate her without

---

[6]FAC, ¶ 6.  Ortega's complaint alleges that she was discharged on "March 15, 201" [sic]. (*Id.*)  The court construes this to mean March 15, 2011 rather than March 15, 2001.  Ortega attaches as Exhibit 1 to her complaint is her Complaint of Discrimination Under the Provisions of the California Fair Employment and Housing Act, which states that she was terminated on "3-15-11." (*Id.*, Exh. 1 (February 16, 2012 Complaint of Discrimination Under the Provisions of the California Fair Employment and Housing Act ("FEHA Complaint")).)  Additionally, AutoZone's motion to dismiss states that Ortega was discharged on March 15, 2011.  (Motion at 2.)  The court therefore considers Ortega to have been discharged on March 15, 2011.

[7]*Id.*, ¶¶ 8, 20.

[8]*Id.*

[9]*Id.*, ¶ 9.

[10]*Id.*, ¶¶ 9, 20, 30.

[11]*Id.*, ¶ 27.

just cause and without proving that she had stolen money.[12]  She asserts that AutoZone employs over a thousand people in Southern California who have been accused of sexual harassment, intimidation, humiliation, and sexual abuse.[13]  She also contends that there has been widespread publicity regarding AutoZone's sexual exploitation of women, and that, despite his actions, Romero continues to be employed by AutoZone.[14]  Ortega alleges that she timely filed complaints with the California Department of Fair Employment and Housing ("DFEH"), which gave her notification of her right to sue.[15]

On July 1, 2013, the court issued an order directing defendants to show cause why the action should not be remanded to Los Angeles Superior Court for lack of subject matter jurisdiction.[16]  The court noted that, like Ortega, Romero was a California citizen.  It also noted that "AutoZone West, Inc. aka Auto Zone International, LLC" was a limited liability company, and that neither the complaint nor the notice of removal provided information concerning the citizenship of the company's owners and members, which prevented the court from determining whether it had subject matter jurisdiction to hear the case.[17]  AutoZone responded, arguing that Romero had been fraudulently joined.  Specifically, it asserted that Romero had not been served, and that Ortega had not shown that she had filed a California Department of Fair Employment and Housing ("DFEH") administrative complaint against Romero.  It also demonstrated that AutoZone West Inc. had no affiliation with Auto Zone International, LLC.[18]  Based on this response, the court discharged the order to show cause.[19]  The court noted that if Ortega served Romero or amended her allegations against him, it might well have to reevaluate jurisdiction.

Although Ortega's first amended complaint states that she will dismiss Romero as a defendant and names only AutoZone West, Inc. in the caption,[20] the pleading continues to assert claims against Romero, and now alleges that AutoZone West Inc. is "an active <u>California</u> corporation with

---

[12]*Id.*, ¶ 12.

[13]*Id.*, ¶ 16.

[14]*Id.*, ¶ 16.

[15]*Id.*, ¶ 21.

[16]Order to Show Cause ("OSC"), Docket No. 7 (July 1, 2013), at 1.

[17]*Id.*; see also Removal, ¶ 9.

[18]Defendants' Response to Order to Show Cause ("Response"), Docket No. 9 (July 8, 2013).

[19]Order Discharging Order to Show Cause, Docket No. 14 (July 22, 2013).

[20]See FAC at 1.

jurisdiction in Delaware under the [S]ecretary of State's website."[21]  For these reasons, the court must revisit whether it has subject matter jurisdiction to hear this action.  See *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 976 n. 12 (9th Cir. 2012) ("federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists").

## II.  DISCUSSION

### A.    Legal Standard Governing Subject Matter Jurisdiction and Fraudulent Joinder

"[J]urisdiction founded on [diversity] requires that parties be in complete diversity and the amount in controversy exceed $75,000."  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); see 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . .").  As there is no indication that it has changed, the court is satisfied that the amount in controversy in this case continues to exceed $75,000.[22]  The court must reassess whether there is complete diversity of citizenship among the parties, however.

A corporation can be a citizen of multiple states for purposes of diversity jurisdiction.  "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The term "principal place of business" "refer[s] to the place where a corporation's officers direct, control, and coordinate the corporation's activities.  It is the place that Courts of Appeals have called the corporation's 'nerve center.'  And in practice it should normally be the place where the corporations maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination[.]"  *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

Thus, if AutoZone is indeed a California citizen, as Ortega now alleges, there would not be complete diversity of citizenship between the parties and the court would lack subject matter jurisdiction.  See *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 722 (9th Cir. 2008) ("We have jurisdiction only if Cook, a resident of California, has citizenship which is diverse from that of every defendant," citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)).

A person is a citizen of the state in which she has her domicile, i.e., a permanent home in which she intends to remain or to which she intends to return.  See *Gilbert v. David*, 235 U.S. 561, 569 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return").  A person's residency does not determine his or her citizenship for purposes of diversity

---

[21]*Id.*, ¶ 5 (emphasis in original).

[22]See OSC at 3.

jurisdiction. *Kanter*, 265 F.3d at 857 ("[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency. To be a citizen of a state, a natural person must first be a citizen of the United States. The natural person's state citizenship is then determined by her state of domicile, not her state of residence. . . . A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state"); *see also Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile"). As mentioned, both Romero and Ortega are California citizens.[23] Romero's citizenship is therefore not diverse from Ortega's.

The joinder of a non-diverse defendant is considered fraudulent, and the party's citizenship may be disregarded for purposes of subject matter jurisdiction, "[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state. . . ." *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). "It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich v. Touche Ross & Co.*, 846 F.2d 1190. 1193 & n. 1 (9th Cir. 1988); *McCabe*, 811 F.2d at 1339); *see also Burden v. General Dynamics Corp.*, 60 F.3d 213, 221-22 (5th Cir. 1995) (concluding that the district court had subject matter jurisdiction where a defendant charged with intentional infliction of emotional distress had been fraudulently joined). The defendant must "prove that individuals joined in the action cannot be liable on any theory." *Ritchey*, 139 F.3d at 1318; *see also McCabe*, 811 F.2d at 1339 (stating that the removing defendant is entitled to present facts showing that the joinder is fraudulent); *Campana v. American Home Products Corp.*, No. 1:99cv250 MMP, 2000 WL 35547714, *3 (N.D. Fla. Mar. 7, 2000) ("The removing party must show, with credible evidence, that there is no possibility that a plaintiff can state a cause of action against the nondiverse defendant").

A defendant must prove fraudulent joinder by clear and convincing evidence. *Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). Thus, "fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting favorably the Fifth Circuit's decision in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (citations omitted)); *see also West American Corp. v. Vaughan Basset Furniture*, 765 F.2d 932, 936 n. 6 (9th Cir. 1985) (stating that the court may consider affidavits, depositions, and other evidence); James W. M. Moore, MOORE'S FEDERAL PRACTICE § 102.21(5)(a) (3d ed. 2008) ("The federal court's review for fraud must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties").

---

[23]Removal, ¶¶ 8-9.

Because courts must resolve all doubts against removal, a court determining whether joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v. Prudential*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998)). "If there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the court must remand." *Id.*; see also *Good*, 5 F.Supp.2d at 807 ("The defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant"). Given this standard, "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys.*, Inc., 141 F.Supp.2d 1005, 1008 (N.D. Cal. 2001).

If Romero was not fraudulently joined, his citizenship destroys the court's diversity jurisdiction and the court must remand the matter to state court. Although Ortega has not moved to remand, the court has a continuing obligation to determine its jurisdiction.[24] See *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. Moreover, courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party" (internal quotations and citations omitted)). It therefore reconsiders the matter *sua sponte*.

## B.   Whether the Court Continues to Have Diversity Jurisdiction to Hear this Action

### 1.   Whether AutoZone is a California Citizen

AutoZone's notice of removal alleges that it is a Delaware corporation with its principal place

---

[24]In doing so, the court reconsiders whether Romero was fraudulently joined; it does not, and need not, address whether Ortega's amended complaint, which has been filed and does not add new defendants, should be permitted under 28 U.S.C. § 1447(e). See *Loid v. Computer Science Corp.*, No. CV–12–5144–EFS, 2013 WL 808696, *2 (E.D. Wash. Mar. 5, 2013) (revisiting the question of fraudulent joinder and remanding the case following plaintiff's motion for leave to file an amended complaint that alleged new claims against defendants the court had earlier determined were fraudulently joined and stating, "the Court may consider material extrinsic to the Complaint – including potential but as-yet-unpled claims – in determining whether the Jarrett Defendants were fraudulently joined. Further, Plaintiffs' proposed amended complaint contains at least one legally-cognizable cause of action against the Jarrett Defendants. Because the Jarrett Defendants were not fraudulently joined, the Court lacks subject-matter jurisdiction over this case, and a remand is required"); *Pakzad v. Mark Hopkins Intercontinental San Francisco*, No. C 03-2863MHP, 2003 WL 22144400, *2 (N.D. Cal. Sept. 2, 2003) (revisiting the question of fraudulent joinder and remanding a case in light of plaintiff's motion to amend a complaint alleging a claim against defendants the court had earlier determined were fraudulently joined).

of business and corporate headquarters in Tennessee.[25]  Exhibit C to the notice of removal is a copy of Ortega's W-2, which reflects an address for AutoZone in Tennessee.[26]  AutoZone also submitted evidence in support of its response to the court's order to show cause that showed it is a Delaware Corporation with its principal place of business in Tennessee.  Specifically, AutoZone submitted the declaration of Chris Coletta, its Manager of Income Tax and Tax Accounting.  Coletta stated that AutoZone is incorporated in Delaware, that its corporate headquarters are in Memphis, Tennessee, that about one thousand individuals are employed at the corporate headquarters, and that those employees direct and control AutoZone's corporate policy in the areas of finance, accounting, merchandising, legal, human resources, payroll, marketing, store operations, supply chain, and information technology.[27]  Coletta states that the President, Chief Financial Officer, Treasurer, and Secretary of AutoZone all have their offices at the corporate headquarters in Memphis, Tennessee.[28]  The declaration of Paul Sciubba, Attorney Manager of AutoZone Relations, stated that AutoZone is a Delaware corporation and that its General Counsel works at the company's office in Memphis, Tennessee.[29]

This evidence sufficiently establishes that AutoZone is a Delaware corporation with its nerve center, and therefore its principal place of business, in Tennessee.  In the first amended complaint, Ortega alleges that AutoZone is a California corporation based on information obtained from the Secretary of State's website.  The court takes judicial notice of the Business Entity Detail for Autozone West, Inc. found on the California Secretary of State's website.  It states that Autozone is a Delaware corporation that does business in California.[30]  Ortega proffers no evidence contradicting AutoZone's substantial showing that it is a Delaware corporation with its corporate headquarters, nerve center and principal place of business in Tennessee.  The court is therefore satisfied that the citizenship of Ortega and AutoZone is diverse.

### 2.      Whether Romero Has Been Fraudulently Joined

As noted, if Romero has been fraudulently joined, the court can disregard his citizenship in

---

[25]*Id.*, ¶ 8.

[26]*Id.*, Exh. C (2011 W-2 Wage and Tax Statement for Lisette Ortega from Autozone West Inc.).

[27]Declaration of Chris Coletta in Response to Order to Show Cause ("Coletta Decl."), Docket No. 9-2 (July 8, 2013), ¶¶ 4-5.

[28]*Id.*, ¶¶ 6-9.

[29]Declaration of Paul Sciubba in Response to Order to Show Cause, Docket No. 9-3 (July 8, 2013), ¶ 4.

[30]See kepler.sos.ca.gov (accessed on November 7, 2013).

determining whether diversity jurisdiction exists.  AutoZone has twice argued – in its notice of removal and in its response to the court's order to show cause – that Romero has been fraudulently joined because Ortega has not stated a claim against him, and has not shown that she filed a DFEH charge against him.  In its pending motion to dismiss, AutoZone contends that Ortega cannot state a claim against Romero because the administrative complaint attached to her first amended complaint did not include harassment and retaliation claims.  It also argues that Ortega's first amended complaint must be dismissed because its allegations are conclusory and fail to satisfy Rule 8 of the Federal Rules of Civil Procedure.

Under the FEHA, "any person claiming to be aggrieved by an alleged unlawful practice [prohibited by the Act] may file with [the Department of Fair Employment and Housing ("DHEF")] a verified complaint, in writing, that shall state the name and address of the person, employer, labor organization, or employment agency alleged to have committed the unlawful practice complained of, and that shall set forth the particulars thereof and contain other information as may be required by the department." CAL. GOV'T CODE §12960(b).  Such complaints must be filed within "one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred." *Id.*, § 12960(d).

To assert a FEHA claim in state or federal court, an employee must file a timely complaint with the DFEH and obtain a right to sue letter from the department. *Romano v. Rockwell Int'l, Inc.*, 14 Cal.4th 479, 492 (1996) ("Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [DFEH] and must obtain from the Department a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA" (citations omitted)); *see also Okoli v. Lockheed Technical Operations Co.*, 36 Cal.App.4th 1607, 1613 (1995).  "[T]he defendant[ ] [in the civil action] must have been named in the caption or body of the DFEH charge." *Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal.App.4th 1505, 1515 (1996).

The purpose of the DFEH complaint process is to provide an administrative remedy that will allow "resolution of disputes and elimination of unlawful employment practices by conciliation." *Yurick v. Superior Court*, 209 Cal.App.3d 1116, 1123 (1989) (citing CAL. GOV'T CODE §§ 12930, 12935, 12963.7); *see Rojo v. Kliger*, 52 Cal.3d 65, 83 (1990) ("In cases appropriate for administrative resolution, the exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation, as well as the salutory goals of easing the burden on the court system, maximizing the use of administrative agency expertise and capability to order and monitor corrective measures, and providing a more economical and less formal means of resolving the dispute," (citation omitted)).  "This requirement is jurisdictional, and failure to comply precludes a plaintiff from suing on the claim." *Wilson v. United Airlines, Inc.*, No. C 98-2460 MMC, 1998 WL 754602, * 1-2 (N.D. Cal. Oct. 23, 1998) (citing *Snipes v. Bakersfield*, 145 Cal. App. 3d 861 (1983)); *see Romano*, 14 Cal.4th at 492 ("The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA"); *Rojo,* 52 Cal.3d at 88 ("[A]n employee must exhaust the FEHA administrative remedy before bringing suit on a cause of action under the act or seeking the relief provided therein"); *Martin v. Lockheed Missiles & Space Co.*, 29 Cal.App.4th 1718, 1724 (1994)

("We have recognized, in the context of the Fair Employment and Housing Act, that '[t]he failure to exhaust an administrative remedy is a jurisdictional, not a procedural, defect,' and thus that failure to exhaust administrative remedies is a ground for a defense summary judgment," quoting *Miller v. United Airlines, Inc.*, 174 Cal.App.3d 878, 890 (1994)); see also *Chambers v. City of Berkeley*, No. C 00-3845 SI, C 00-4037 SI, 2002 WL 433606, *3 (N.D. Cal. Mar. 18, 2002) ("A plaintiff must exhaust her administrative remedies by filing a complaint with the DFEH and receiving a right to sue letter before bringing a suit on a cause of action under the FEHA.  Failure to exhaust administrative remedies is a jurisdictional, not procedural, defect, and may be a ground for summary judgmen" (citations omitted)).

Exhibit 1 to Ortega's first amended complaint is a copy of a right-to-sue letter issued by DFEH based on a DFEH complaint Ortega filed against AutoZone.[31]  The complaint is numbered DFEH number E-201112-T-0678-00-rc ("Complaint #00"), and names Ernesto Romero as the manager about whom Ortega complains.  The complaint asserts that Romero terminated, laid off, demoted, denied employment, denied a promotion, denied transfer, and/or denied accommodation[32] to Ortega because of her sex, age, religion, race, national origin, and/or sexual orientation,[33] and in retaliation for engaging in protected activity.[34]  The complaint is stamped "Received, Feb. 17, 2012, Dept of Fair Employment & Housing."[35]  The letter from DFEH is dated February 27, 2012, and states "[t]his letter is also the Right-To-Sue Notice.  According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the [FEHA] against the person [or] employer . . . named in the above-referenced complaint."[36]

Defendants do not dispute the authenticity of the documents attached to Ortega's amended

---

[31]FAC, Exh. 1 (DFEH Complaint).  Exhibit 1 contains two right-to-sue letters based on two complaints.  The second complaint, DFEH number E-201112-T-0678-01-rc ("Complaint #01"), is substantially identical to Complaint #00 but names Ernesto Moreno as the manager about whom Ortega complains.  In contrast to Complaint #00, on this complaint Ortega did not check the box "other" in describing Moreno's alleged conduct, nor the box indicating that the conduct occurred because of her "sexual orientation."  Unlike Complaint #00, moreover, the verified portion of Complaint #01 is not dated.

[32]Ortega checked the box for "other" types of conduct, but did not explain what "other" conduct she referenced.

[33]Once again, Ortega checked the box indicating that she suffered discrimination on "other" bases, but did not describe what those bases were.

[34]*Id.*

[35]*Id.*

[36]*Id.*

complaint.  Ortega has therefore shown that she filed a DFEH complaint against AutoZone, named Romero in the body of the complaint, and filed the complaint within one year of her termination.  The jurisdictional inquiry regarding exhaustion of remedies does not end there, however, for the "scope of the written administrative charge defines the permissible scope of the subsequent civil action." *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001) (citing *Yurick v. Superior Court*, 209 Cal.App.3d 1116, 1121-23 (1989)).  As a result, a complaint alleging FEHA claims that were not raised in the DFEH complaint asserts causes of action that have not been administratively exhausted, and that are therefore barred.  See *id*. ("Allegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust").

"[C]laimants are not required to specify the charges [in a DFEH complaint] with 'literary exactitude.'" *Ramirez v. Silgan Containers*, No. CIV F 07-0091 AWI DLB, 2007 WL 1241829, *4 (E.D. Cal. Apr. 25, 2007).  Rather, whether a plaintiff has exhausted his or her administrative remedies under the FEHA

> "depends on an analysis of the 'fit' between the administrative charge and the [subsequent civil] lawsuit.  The test for that 'fit' is whether the alleged discriminatory acts in the lawsuit are like or reasonably related to the allegations contained in the administrative charge.  The absence of a perfect 'fit' between the administrative charge and the judicial complaint is therefore not fatal to judicial review if the policies of promoting conciliation and avoiding bypass of the administrative process have been served." *Yurick*, 209 Cal.App.3d at 1122.

An allegation that is like or reasonably related to the allegations contained in the administrative charge is one that "would necessarily have been discovered by investigation of the charged incidents.  Essentially, if an investigation of what *was* charged in the administrative agency filing would necessarily uncover other incidents that were not charged, the latter incidents [can] be included in a subsequent civil action." *Soldinger v. Northwest Airlines, Inc.*, 51 Cal.App.4th 345, 381 (1996) (internal citations and quotations omitted).

An entirely new basis for relief alleged in a civil complaint, however, i.e., one that differs from those asserted before the DFEH, runs afoul of FEHA's exhaustion requirement.  See, e.g., *Okoli v. Lockheed Technical Operations Co.*, 36 Cal.App.4th 1607, 1615 (1995) (holding that there had been a failure to exhaust "when the difference between the charge and the complaint is a matter of adding an entirely new basis for the alleged discrimination," since "a complaint alleging race discrimination is neither 'like or related to' nor likely to be discovered in a 'reasonable' investigation of a charge of sex discrimination" (internal citations omitted)).  As a result, in evaluating whether a complainant has exhausted administrative remedies as required by FEHA, courts must carefully examine the factual allegations contained in the administrative complaint in assessing whether a DFEH investigation would have uncovered events or claims that are not specifically detailed there.  See, e.g., *Noel v. City of Oroville*, No. 2:07-CV-00728 WBS EFB, 2007 WL 3034815, *5 (E.D. Cal. Oct. 16, 2007) ("In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the

discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred," quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)); *Coggins v. Gap, Inc.*, No. A095580, 2002 WL 31831656, *9 (Cal. App. Dec. 18, 2002) (Unpub. Disp.) ("The crucial element of a charge of discrimination is the *factual* statement contained therein. . . .  If the new claims are not so related that they would not have been pursued by a reasonably thorough DFEH investigation of the original charge, then the district court must dismiss these claims to allow the DFEH an opportunity to pursue them first. . . .  The claims are not alike or reasonably related unless there is a factual relationship between them.  This means that the administrative charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*" (emphases original; citations and punctuation omitted)).

Here, the allegations in Ortega's DFEH complaint that are most relevant to her claims in this action are that Romero terminated her because of her sex and in retaliation for engaging in protected activity.[37]  In response to the complaint form's request that she "state what [she] believe[d] to be the reason(s) for [the] discrimination," Ortega wrote "please see attachment."  The attachment reported:

> "I was terminated for stealing money from my job.  I worked for four years with the same company and I was never disciplined for any reason.  About two years ago I used to work in another store from the same company and there was an incident where all my coworkers were fired for stealing merchandise f[ro]m the store.  Cameras were recording all the events[.]  I was not terminated since the cameras proved I was the only one not stealing.  ¶ I was accused of stealing and not following procedures."[38]

Ortega's civil complaint alleges claims for harassment, failure to prevent harassment, and retaliation.[39]  As noted, the harassment claim is based on allegations that Romero frequently disparaged Ortega by stating that she should not be doing men's work.[40]  Her failure to prevent harassment claim is based on allegations that AutoZone knew of Romero's conduct and failed to take corrective measures, and that Romero knew others were harassing Ortega and failed to address the conduct.[41]  The retaliation claim is based on allegations that Romero fired Ortega on the pretext that she was stealing money, when he in fact he was retaliating against her because she had complained

---

[37]See FAC, Exh. 1 (DFEH Complaint).

[38]*Id.*

[39]*Id.*

[40]*Id.*, ¶¶ 8-9.

[41]*Id.*, ¶¶ 12, 20, 30.

about his harassment.[42]

There is not a perfect fit between Ortega's DFEH complaint and her harassment and failure to prevent harassment claims, since being terminated is not tantamount to harassment. See *Shuman v. American Home Assur. Co.*, No. C 05-3644 PJH, 2005 WL 3113100, *2 (N.D. Cal. Nov. 21, 2005) ("[W]rongful termination is not equivalent to a claim for harassment"). There is also not a perfect fit between Ortega's DFEH complaint and her retaliation claim, in the sense that the DFEH complaint does not specifically mention that she complained about sexual harassment. Her retaliation claim, however, is like or reasonably related to the retaliation referenced in her DFEH complaint. Although the DFEH complaint does not specifically mention that Ortega complained of sexual harassment, it does assert that Romero's decision to terminate her was due to her sex and in retaliation for protected activity. It also states that Ortega was fired for stealing money but did not do so. An administrative investigation of the allegations in the DFEH complaint would necessarily have uncovered Ortega's allegations that Romero fired her in retaliation for complaints about his sexual harassment: indeed, the first and most obvious information the agency would have sought when investigating the charges asserted in the DFEH complaint is the nature of the protected activity in which Ortega engaged. DFEH would have also asked why Ortega believed she was fired because of her sex. Both lines of inquiry would necessarily have uncovered Romero's alleged harassment of Ortega and its relationship to her allegation of retaliation. For that reason, the court concludes that Ortega exhausted her administrative remedies with respect to the retaliation claim and that there is therefore no jurisdictional bar to asserting such a claim against Romero.[43] See *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal.App.4th 846, 859 (1994) (holding that a civil complaint alleging that an employee's termination was motivated by his national origin – Indian – was not barred by plaintiff's failure to check the "national origin" box on his administrative complaint because the court was "confident that the administrative investigation into Sandhu's claim of disparate treatment because h[is race] was "Asian" would likely have encompassed both race and national origin").

Because Ortega's retaliation claim against Romero is not barred, AutoZone can show that Romero has been fraudulently joined only if it can demonstrate that "there is no possibility" Ortega can prevail on the claim. *Good*, 5 F.Supp.2d at 807. AutoZone's argument concerning the sufficiency of Ortega's retaliation claim asserts only that Ortega has not alleged enough facts to state a claim under the Rule 8. Assuming AutoZone is correct, and Ortega's allegations against Romero are too vague and conclusory to state a retaliation claim against him, AutoZone has not shown that Ortega would be unable to plead facts sufficient to state such a claim were she given the opportunity to amend her complaint.

---

[42]*Id.*, ¶ 39.

[43]Whether Ortega's harassment and failure to prevent harassment claims are like or reasonably related to the allegations in the DFEH complaint is a closer question, but one the court need not reach, given that Ortega's retaliation claim is sufficiently related to the allegations in her DFEH complaint.

"Merely showing that an action is likely to be dismissed against [a] defendant does not demonstrate fraudulent joinder. Rather, it must appear to 'a near certainty' that joinder was fraudulent. As a result, the removing defendant must establish that there is absolutely no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant. . . . Thus, that a claim against the in-state defendant is insufficiently pled does not prove clearly and convincingly that there is absolutely no possibility that the plaintiff will be able to establish a cause of action." *Amarant v. Home Depot U.S.A., Inc.*, No. 1:13–cv–00245–LJO–SKO, 2013 WL 3146809, *6 (E.D. Cal. June 18, 2013).

District courts frequently remand cases where the complaint fails sufficiently to allege facts supporting a claim against a non-diverse defendant, but where the court concludes it is possible the plaintiff can cure the deficiency by amendment. See, e.g., *Chavez v. Amerigas Propane, Inc.*, No. CV 12-07524 MMM (Ex), 2013 WL 25882, *5 (C.D. Cal. Jan. 2, 2013) (citing *Asurmendi v. Tyco Electronics Corp.*, No. C 08-5699 JF (PVT), 2009 WL 650386, *5 (N.D. Cal. Mar. 11, 2009)); *Burris v. AT&T Wireless, Inc.*, No. C 06–02904 JSW, 2006 WL 2038040, *2 (N.D. Cal. July 19, 2006). "[D]istrict courts applying the fraudulent joinder standard have generally found a non-fanciful possibility of liability, even where plaintiff's claim appears to be 'relatively weak.'" *Chavez,* 2013 WL 25882 at *5.

Nothing in Ortega's first amended complaint or in AutoZone's motion to dismiss or earlier briefing suggests that Ortega will be unable to plead additional facts supporting a retaliation claim if given an opportunity to do so.[44] Consequently, the court cannot say there is no possibility that Ortega cannot prevail on her retaliation claim against Romero. See *Amarant*, 2013 WL 3146809 at *13 ("Removal jurisdiction is to be strictly construed and any doubt as to jurisdiction must be resolved in favor of remand"). For that reason, the court concludes that Romero has not been fraudulently joined, and that it cannot ignore his citizenship in assessing whether there is diversity jurisdiction to hear the action. Romero's California citizenship destroys complete diversity and the court lacks subject matter jurisdiction over this case. See *Burris*, 2006 WL 2038040 at *2 ("Cingular does not argue that Burris cannot assert a tort claim for emotional distress against his former supervisor as a matter of law. Rather, Cingular argues that Burris failed to state a claim for intentional infliction of emotional distress because he did not allege any extreme or outrageous conduct, a necessary element of this claim. . . . Although as currently ple[d], Burris has not alleged conduct which may be

_____

[44]The court elects to remand the action rather than issue another order to show cause because AutoZone already briefed fraudulent joinder in its removal notice and in its response to the court's order to show cause, and has fully set forth its arguments as to why Ortega's retaliation claim against Romero fails in the pending motion to dismiss. In these briefs and in its first motion to dismiss, AutoZone has argued consistently that the court must dismiss the case because Ortega failed to exhaust administrative remedies and because her allegations are too conclusory to satisfy Rule 8. Accordingly, the court concludes that allowing AutoZone to file yet another brief would be futile, as it has surely made all arguments it has on the merits of Ortega's retaliation claim.

considered extreme or outrageous, Cingular has not demonstrated that, under California law, Burris would not be afforded leave to amend his complaint to cure this purported deficiency.  Accordingly, Cingular failed to demonstrate that it is obvious under settled state law that Burris cannot prevail against Mr. Caniglia and thus has not demonstrated that this Court has subject matter jurisdiction").

## III. CONCLUSION

For the reasons stated, the court concludes that it does not have diversity jurisdiction to hear this action.  The court therefore directs the clerk to remand the action to Los Angeles Superior Court forthwith.